IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER NICOLETTI, | |
| Plaintiff, | |
| v. | Case No. 1:21-cv-01454 |
| JONES LANG LASALLE AMERICAS, INC. | Hon. John Z. Lee |
| | Hon. Magistrate Jeffrey Cole |
| Defendant. | |

**ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT**

Defendant Jones Lang Lasalle Americas, Inc., ("Defendant" or "JLL"), answers Plaintiff Peter Nicoletti's ("Plaintiff") First Amended Complaint ("FAC") as follows:

**Jurisdiction, Parties, and Venue**

1. Peter Nicoletti is a natural person who is a resident of the State of Florida and, for purposes of diversity jurisdiction, a citizen of Florida.

**ANSWER:** JLL lacks knowledge or information sufficient to form a belief as to Plaintiff's residency.

2. Jones Lang LaSalle Americas, Inc. is a Maryland corporation with its principal place of business in Chicago, Illinois.

**ANSWER:** JLL admits the allegations in Paragraph 2 of the FAC.

3. This Court has subject matter jurisdiction under 28 U.S.C § 1332 (diversity of citizenship) because Mr. Nicoletti and JLL are citizens of different states and the sum or value of the matter in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER:** JLL admits the allegations in Paragraph 3 of the FAC.

4. This Court has personal jurisdiction over JLL because it transacts business and its principal place of business is in the State of Illinois and in this District.

**ANSWER:** JLL admits the allegations in Paragraph 4 of the FAC.

5. Venue is proper under 28 U.S.C. § 1391(b)(1) because JLL's principal place of business is in this District.

**ANSWER:** JLL admits the allegations in Paragraph 5 of the FAC.

### Administrative Proceedings

6. Mr. Nicoletti dually-filed a Charge of Discrimination with both the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC") alleging that JLL violated the Americans with Disabilities Act ("ADA").

**ANSWER:** JLL admits the allegations in Paragraph 6 of the FAC.

7. On June 24, 2021, the EEOC issued a Notice of Right to Sue Letter. A copy of the Notice of Right to Sue Letter is attached as Exhibit A.

**ANSWER:** JLL admits the allegations in Paragraph 7 of the FAC.

8. All other conditions precedent to the bringing of this action have occurred, been performed or been waived.

**ANSWER:** JLL admits the allegations in Paragraph 8 of the FAC.

### General Allegations

9. This action seeks damages for JLL's retaliation in violation of the ADA, Family and Medical Leave Act ("FMLA"), breach of its contractual obligations to Mr. Nicoletti, unjust enrichment, and unpaid wages.

**ANSWER:** JLL admits that Plaintiff seeks damages under the ADA, the FMLA, and common law. JLL denies the remaining allegations in Paragraph 9 of the FAC.

10. On January 22, 2008, Mr. Nicoletti entered into an employment agreement with JLL. A copy of the employment agreement is attached as Exhibit B.

**ANSWER:** JLL denies the allegations in Paragraph 10 of the FAC.

11. While employed by JLL, Mr. Nicoletti was an employee as defined by common law.

**ANSWER:** Paragraph 11 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL admits the allegations in Paragraph 11 of the FAC.

12. The work Mr. Nicoletti performed for JLL was directly essential to JLL's business.

**ANSWER:** JLL admits the allegations in Paragraph 12 of the FAC.

13. JLL was and is an employer as defined by the FMLA and common law.

**ANSWER:** Paragraph 13 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL admits the allegations in Paragraph 13 of the FAC.

14. JLL was and is an enterprise engaged in commerce as defined by the common law.

**ANSWER:** Paragraph 14 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL admits the allegations in Paragraph 14 of the FAC.

15. JLL's employment agreement with Mr. Nicoletti expressly incorporated JLL's Code of Business Ethics. *See* Exhibit B, p.4. A copy of JLL's Code of Business Ethics is attached as Exhibit C.

**ANSWER:** JLL admits that a copy of its Code of Business Ethics is attached as Exhibit C. JLL denies the remaining allegations in Paragraph 15 of the FAC.

16. Under the JLL Code of Ethics, JLL, among many other things, promised that it would not discriminate against Mr. Nicoletti on the basis of his disability, stated that it does "not tolerate retaliation", and that it takes "claims of retaliation very seriously." *See* Exhibit C at 15.

**ANSWER:** JLL admits that Paragraph 16 of the FAC correctly quotes portions of JLL's Code of Business Ethics. JLL denies any remaining allegations in Paragraph 16 of the FAC.

17. In March of 2020, JLL requested Mr. Nicoletti to enter into a U.S. Capital Markets Producer Compensation Plan ("the Plan"). A copy of the Plan is attached as Exhibit D.

**ANSWER:** JLL admits that a copy of the Plan is attached as Exhibit D. JLL denies the remaining allegations in Paragraph 17 of the FAC.

18. After Mr. Nicoletti expressed hesitation concerning the terms of the Plan, JLL ultimately forced Mr. Nicoletti to sign the Plan on March 26, 2020.

**ANSWER:** JLL denies the allegations in Paragraph 18 of the FAC.

### A. Mr. Nicoletti remained an excellent performer despite his cancer diagnosis.

19. Mr. Nicoletti is an accomplished commercial real estate broker.

**ANSWER:** JLL denies the allegations in Paragraph 19 of the FAC.

20. At JLL, Mr. Nicoletti was very successful, generating millions of dollars of brokerage fees for JLL each year.

**ANSWER:** JLL denies the allegations in Paragraph 20 of the FAC.

21. On November 13, 2017, Mr. Nicoletti was diagnosed with Acute Myeloid Leukemia ("AML").

**ANSWER:** JLL lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 21 of the FAC.

22. Around this same time, Mr. Nicoletti notified JLL's Head of Capital Markets Jay Koster, President of Capital Markets John Geanokos, Mr. Nicoletti's direct supervisor Blake Lacher, and other employees of his condition.

**ANSWER:** JLL denies the allegations in Paragraph 22 of the FAC.

23. CEO of the Americas Greg O'Brian was similarly aware of Mr. Nicoletti's condition. In fact, Mr. O'Brian recommended an AML specialist to Mr. Nicoletti.

**ANSWER:** JLL denies the allegations in Paragraph 23 of the FAC.

24. As a result of Mr. Nicoletti's diagnosis, he underwent 26 days of chemotherapy, during which he was hospitalized. Following his exit from the hospital, Mr. Nicoletti continued to receive chemotherapy treatments on a monthly basis — each time requiring an in-hospital stay of five (5) days.

**ANSWER:** JLL lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 24 of the FAC.

25. Despite his ongoing treatment, Mr. Nicoletti continued to perform his job duties from home and, on occasion, from JLL's office when possible despite being on FMLA leave. In fact, on one particular occasion, Mr. Nicoletti chartered a private jet to Houston, Texas in order to pitch a deal to a potential client.

**ANSWER:** JLL denies the allegations in Paragraph 25 of the FAC.

26. Mr. Nicoletti ultimately closed the year of 2017 as one of the top producers in all JLL Capital Markets.

**ANSWER:** JLL denies the allegations in Paragraph 26 of the FAC.

27. On March 1, 2018, Mr. Nicoletti received a stem cell transplant. Following the transplant, Mr. Nicoletti was required to quarantine at home until June.

**ANSWER:** JLL lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 27 of the FAC.

28. During those months, Mr. Nicoletti continued to actively perform his job duties — actively working on transactions and coordinating with his team.

**ANSWER:** JLL denies the allegations in Paragraph 28 of the FAC.

29. In June of 2018, Mr. Nicoletti began to transition back into the workplace on a part-time basis. Initially, Mr. Nicoletti worked in the office one-to-two days a week, but eventually returned to the office on a full-time basis by September of 2018.

**ANSWER:** JLL denies the allegations in Paragraph 29 of the FAC.

30. Mr. Nicoletti's performance continued to be excellent. In fact, Mr. Nicoletti closed 2018 in the top 10% of all Capital Markets producers.

**ANSWER:** JLL denies the allegations in Paragraph 30 of the FAC.

### B. Despite Mr. Nicoletti's continued positive performance, JLL began singling him out.

31. Prior to his AML diagnosis, Mr. Nicoletti had been in the process of finalizing a new employment agreement with JLL. Specifically, Mr. Koster had informed Mr. Nicoletti that the new deal would be finalized by the end of November 2017. However, following Mr. Nicoletti's diagnosis and during his hospitalizations, Mr. Nicoletti never received any additional information from Mr. Koster.

**ANSWER:** JLL admits that there were discussions about a retention deal with Mr. Nicoletti, but denies the remaining allegations in Paragraph 31 of the FAC.

32. In November of 2018, Mr. Nicoletti was called into a meeting with Mr. Koster, Mr. Geanokos, and Mr. Lacher, in which Mr. Nicoletti was informed that he would not be provided with the new employment agreement.

**ANSWER:** JLL denies the allegations in Paragraph 32 of the FAC.

33. Mr. Nicoletti was told that the purported reason for this change in plans was the fact that he was allegedly "being difficult" with commission split negotiations.

**ANSWER:** JLL denies the allegations in Paragraph 33 of the FAC.

34. In response, Mr. Nicoletti noted that JLL had just recently completed a new deal with another employee that was notorious for negotiating internal fee splits. However, Mr. Nicoletti was simply told, "it is what it is".

**ANSWER:** JLL denies the allegations in Paragraph 34 of the FAC.

C. *Mr. Nicoletti suffered from additional health issues.*

35. In February of 2019, Mr. Nicoletti contracted parainfluenza and was hospitalized for six (6) days in the Intensive Care Unit with pneumonia. Mr. Nicoletti also suffered from additional complications, which included liver and kidney failure, as well as a heart attack. Mr. Nicoletti also suffered from a blood clot in his leg when he left the hospital and was effectively bed ridden for three (3) weeks afterward.

**ANSWER:** JLL lacks knowledge or information sufficient to form a belief regarding the allegations in Paragraph 35 of the FAC.

36. Despite these ongoing health concerns, Mr. Nicoletti notified Mr. Koster, Mr. Geanokos, and Mr. Lacher at the time of each hospitalization and the impossibility of travel following Mr. Nicoletti's blood clot.

**ANSWER:** JLL denies the allegations in Paragraph 36 of the FAC.

37. Despite this, Mr. Nicoletti continued to be actively involved in all his deals during this time.

**ANSWER:** JLL denies the allegations in Paragraph 37 of the FAC.

38. Following his recovery, Mr. Nicoletti again returned to the office in April of 2019 on a full-time basis.

**ANSWER:** JLL denies the allegations in Paragraph 38 of the FAC.

D. *Mr. Nicoletti is purposefully targeted during JLL's ongoing merger.*

39. On March 19, 2019, JLL announced a merger with HFF, Inc.

**ANSWER:** JLL denies the allegations in Paragraph 39 of the FAC.

40. On July 1, 2019, the JLL acquisition of HFF officially closed.

**ANSWER:** JLL denies the allegations in Paragraph 40 of the FAC.

41. On August 2, 2019, Mr. Nicoletti reached out directly to the new President of Capital Markets, Jodi Thorton, and CEO and Head of Capital Markets, Mark Gibson, in an effort to discuss his role in the new structure.

**ANSWER:** JLL admits the allegations in Paragraph 41 of the FAC.

42. On August 15, 2019, Mr. Nicoletti met with Mr. Gibson in Dallas, Texas. During this meeting, Mr. Gibson informed me that he had "done his research on Mr. Nicoletti," and that he had heard that Mr. Nicoletti "was difficult to deal with" and "not a team player." Mr. Gibson also explained that he had also heard Mr. Nicoletti was a new person and that he would need to "work" with others if he wanted to "make it work."

**ANSWER:** JLL denies the allegations in Paragraph 42 of the FAC.

43. Mr. Gibson's allegations left Mr. Nicoletti incredulous. In response, Mr. Nicoletti explained that he had created three of the most success business lines within JLL's Capital Markets groups and, most importantly, had done so by implementing and following a team structure.

**ANSWER:** JLL lacks knowledge or information sufficient to form a belief regarding Mr. Nicoletti's feelings. JLL denies the remaining allegations in Paragraph 43 of the FAC.

44. Mr. Gibson ended the meeting by telling Mr. Nicoletti to meet with the head of the New York City office, Mike Tepedino, to discuss the team and their ongoing role.

**ANSWER:** JLL denies the allegations in Paragraph 44 of the FAC.

45. On September 3, 2019, Mr. Nicoletti met with Mr. Tepedino. During this meeting, Mr. Nicoletti and Mr. Tepedino reviewed Mr. Nicoletti's history with JLL and discussed a business plan for moving forward.

**ANSWER:** JLL admits that Plaintiff met with Mr. Tepedino to review his employment history and discuss a business plan for moving forward. JLL denies the remaining allegations in Paragraph 45 of the FAC.

46. More than two months later, on November 19, 2019, Mr. Nicoletti was informed by Mr. Tepedino that JLL was going to disband Mr. Nicoletti's team and that his job role would be changed to bring in business and utilize the "platform" to execute deals. Mr. Nicoletti was also told that his fellow team members would be allowed to find roles in other groups, but that Mr. Nicoletti himself would not be allowed to have his own team to execute deals.

**ANSWER:** JLL admits that Mr. Nicoletti was informed his team would be disbanded and that his job role would change. JLL denies the remaining allegations Paragraph 46 of the FAC.

7

### E. *JLL's conduct continued following the implementation of its new structure.*

47. Following this change in structure, JLL repeatedly and unnecessarily changed Mr. Nicoletti's work location over the period spanning from October of 2019 to February of 2020.

**ANSWER:** JLL denies the allegations in Paragraph 47 of the FAC.

48. For example, in October of 2019, Mr. Nicoletti was moved from JLL's New York headquarters to an old HFF office.

**ANSWER:** JLL admits that Plaintiff, along with the entire securities team, moved from JLL's New York Headquarters to HFF's New York headquarters.

49. Just two months later, in December of 2019, JLL moved Mr. Nicoletti *back* to JLL's headquarters.

**ANSWER:** JLL admits that Plaintiff moved back to JLL's headquarters when he decided to do less securities work and be part of the New York office.

50. Another two months later, in February of 2020, JLL again moved Mr. Nicoletti—this time across the office and without any notification.

**ANSWER:** JLL denies the allegations in Paragraph 50 of the FAC.

51. During this same time period, Mr. Nicoletti was repeatedly excluded from group and product type calls and meetings. Mr. Nicoletti was also repeatedly excluded from requests-for-proposals, client meetings, and various other opportunities.

**ANSWER:** JLL denies the allegations in Paragraph 51 of the FAC.

52. In January of 2020, Mr. Nicoletti's executive assistant was re-assigned without his knowledge to another group, leaving Mr. Nicoletti without any administrative support.

**ANSWER:** JLL denies the allegations in Paragraph 52 of the FAC.

53. Eventually, after raising concerns with this conduct, Mr. Nicoletti was added to a list of nine (9) other individuals to whom his executive assistant was assigned. This unilateral reassignment left Mr. Nicoletti with extremely limited support and severely affected his ability to perform his job.

**ANSWER:** JLL admits that Nicoletti's executive assistant was assigned to multiple individuals. JLL denies the remaining allegations in Paragraph 53 of the FAC.

54. Unfortunately for JLL, their efforts to force Mr. Nicoletti's resignation were unfruitful.

**ANSWER:** JLL denies the allegations in Paragraph 54 of the FAC.

**F. When JLL's efforts to get Mr. Nicoletti to quit failed, the company conjured up a pretextual reason to terminate him.**

55. On May 8, 2020, Mr. Nicoletti received an email and calendar invite for a "mandatory" call. On this call were Andrew Scandalios, Mr. Nicoletti's direct report in New York City, and Melony Jones, a Human Resources representative.

**ANSWER:** JLL admits the allegations in Paragraph 55 of the FAC.

56. During this call, Mr. Scandalios informed Mr. Nicoletti that he was terminated.

**ANSWER:** JLL admits the allegations in Paragraph 56 of the FAC.

57. When Mr. Nicoletti inquired as to the reasoning for his dismissal, Mr. Scandalios failed to provide an answer.

**ANSWER:** JLL denies the allegations in Paragraph 57 of the FAC.

58. However, after Mr. Nicoletti continued to press, Mr. Scandalios offered the reason for Mr. Nicoletti's immediate and sudden termination. Mr. Scandalios amazingly stated that Mr. Nicoletti had "not attended Monday morning meetings."

**ANSWER:** JLL admits that Mr. Scandalios explained that Plaintiff's failure to attend Monday morning meetings was an example of the lack of collaboration which was one of the bases for his termination. JLL denies the remaining allegations in Paragraph 58 of the FAC.

59. In response, Mr. Nicoletti explained to Mr. Scandalios that he had never been invited to such a meeting until after the New York Capital Markets Strategic Planning Off-site for Producers, which was held on January 9, 2020.

**ANSWER:** JLL denies the allegations in Paragraph 59 of the FAC.

60. Mr. Scandalios simply responded that Mr. Nicoletti's statement was "not true."

**ANSWER:** JLL denies the allegations in Paragraph 60 of the FAC.

61. Mr. Scandalios then changed his reasoning for the termination, instead claiming that Mr. Nicoletti's production was "low" in 2019.

**ANSWER:** JLL admits that Plaintiff's performance was one reason given for his termination. JLL denies the remaining allegations in Paragraph 61 of the FAC.

62. Of course, this was similarly untrue. In fact, Mr. Nicoletti noted that his performance had remained positive despite his ongoing health issues during the year.

**ANSWER:** JLL denies the allegations in Paragraph 62 of the FAC.

63. Making clear the pretext for his termination, Ms. Jones stated that JLL was "unaware of any ongoing health issues" with which Mr. Nicoletti suffered.

**ANSWER:** JLL admits that Ms. Jones stated she was unaware of Mr. Nicoletti's health issues. JLL denies the remaining allegations in Paragraph 63 of the FAC.

64. During this meeting, Mr. Nicoletti also inquired as to how he would be able to continue his healthcare coverage as a result of his termination.

**ANSWER:** JLL denies the allegations in Paragraph 64 of the FAC.

65. Ms. Jones stated that she would call Mr. Nicoletti later that same afternoon to discuss further.

**ANSWER:** JLL admits the allegations in Paragraph 65 of the FAC.

66. However, Mr. Nicoletti never received any follow-up from Ms. Jones or anyone other individual at JLL.

**ANSWER:** JLL denies the allegations in Paragraph 66 of the FAC.

67. Notably, Mr. Nicoletti's next communication from JLL was an email from Ms. Jones on May 15, 2020 stating that JLL had been unsuccessful in reaching Mr. Nicoletti via phone, despite the fact that Mr. Nicoletti never received a call from anyone at JLL with regard to his termination process.

**ANSWER:** JLL denies the allegations in Paragraph 67 of the FAC.

68. Under the express terms of the Plan, Mr. Nicoletti was entitled to receive all earned but unpaid commission payments for transactions that close during the term of his employment. *See* Exhibit D, p. 5.

**ANSWER:** JLL denies the allegations in Paragraph 68 of the FAC.

69. To date, JLL has refused to pay Mr. Nicoletti any commission payments.

**ANSWER:** JLL denies the allegations in Paragraph 69 of the FAC.

70. Mr. Nicoletti has engaged the undersigned law firm to represent him in this action and is obligated to pay a reasonable fee for its services.

**ANSWER:** JLL admits the allegations in Paragraph 70 of the FAC on information and belief.

71. All conditions precedent to maintaining this action have occurred, been performed or have been waived.

**ANSWER:** JLL admits the allegations in Paragraph 71 of the FAC.

## Count One
## FMLA Retaliation

72. Mr. Nicoletti alleges and incorporates by reference the allegations in paragraphs 1 through 53.

**ANSWER:** JLL incorporates by reference its answers to Paragraphs 1 through 53 of the FAC.

73. This is an action by Mr. Nicoletti against JLL for retaliation in violation of the FMLA.

**ANSWER:** JLL admits that Plaintiff brings the claims raised in Paragraph 73 of the FAC. JLL denies the remaining allegations in Paragraph 73 of the FAC.

74. JLL retaliated against Mr. Nicoletti because of his exercise of his rights to leave under the FMLA.

**ANSWER:** Paragraph 74 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL denies the allegations in Paragraph 74 of the FAC.

75. As a result of JLL's conduct, including its termination of Mr. Nicoletti's employment, Mr. Nicoletti has suffered actual damages, plus consequential and other damages flowing from JLL's breaches in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

**ANSWER:** JLL denies the allegations in Paragraph 75 of the FAC.

76. Pursuant to the FMLA, Mr. Nicoletti is entitled to an award of his attorneys' fees and expenses.

**ANSWER:** JLL denies the allegations in Paragraph 76 of the FAC.

### Count Two
### Breach of Contract

77. Mr. Nicoletti alleges and incorporates by reference the allegations in paragraphs 1 through 53.

**ANSWER:** JLL incorporates by reference its answers to Paragraphs 1 through 53 of the FAC.

78. This is an action by Mr. Nicoletti against JLL for breach of contract.

**ANSWER:** JLL admits that Plaintiff brings the claims raised in Paragraph 78 of the FAC. JLL denies the remaining allegations in Paragraph 78 of the FAC.

79. Mr. Nicoletti entered into a contract with JLL: the employment agreement attached as Exhibit B that incorporated JLL's Code of Business Ethics attached as Exhibit C.

**ANSWER:** Paragraph 79 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL denies the allegations in Paragraph 79 of the FAC.

80. JLL materially breached the contract when it discriminated against Mr. Nicoletti and terminated him on the basis of his disability.

**ANSWER:** Paragraph 80 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL denies the allegations in Paragraph 80 of the FAC.

81. JLL has also materially breached the contract by refusing to pay Mr. Nicoletti the commission payments it owes him under the employment agreement.

**ANSWER:** Paragraph 81 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL denies the allegations in Paragraph 81 of the FAC.

82. JLL has also materially breached the Plan by refusing to pay Mr. Nicoletti the commission payments it owes him pursuant to it.

**ANSWER:** Paragraph 82 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL denies the allegations in Paragraph 82 of the FAC.

83. As a result of JLL's breaches, Mr. Nicoletti has suffered actual damages, plus consequential and other damages flowing from JLL's breaches in an amount to be determined at trial, plus attorneys' fees, costs, and interest.

**ANSWER:** JLL denies the allegations in Paragraph 83 of the FAC.

## Count Three
## Unjust Enrichment

84. Mr. Nicoletti alleges and incorporates by reference the allegations in paragraphs 1 through 53.

**ANSWER:** JLL incorporates by reference its answers to Paragraphs 1 through 53 of the FAC.

85. This is an action by Mr. Nicoletti against JLL for unjust enrichment.

**ANSWER:** JLL admits that Plaintiff brings the claims raised in Paragraph 85 of the FAC. JLL denies the remaining allegations in Paragraph 85 of the FAC.

86. Mr. Nicoletti conferred benefits upon JLL. From Mr. Nicoletti's services and successful commercial real estate brokerage business, JLL received benefits in the form of millions of dollars of brokerage fees.

**ANSWER:** JLL denies the allegations in Paragraph 86 of the FAC.

87. JLL voluntarily accepted and retained these benefits.

**ANSWER:** JLL denies the allegations in Paragraph 87 of the FAC.

88. Under the circumstances, it would be inequitable for JLL to retain these benefits without paying Mr. Nicoletti for them.

**ANSWER:** JLL denies the allegations in Paragraph 88 of the FAC.

## Count Four
## Common Law Unpaid Wages

89. Mr. Nicoletti alleges and incorporates by reference the allegations in paragraphs 1 through 53.

**ANSWER:** JLL incorporates by reference its answers to Paragraphs 1 through 53 of the FAC.

90. This is an action by Mr. Nicoletti against JLL for unpaid wages under common law.

**ANSWER:** JLL admits that Nicoletti brings the claims raised in Paragraph 90 of the FAC. JLL denies the remaining allegations in Paragraph 90 of the FAC and denies that Plaintiff is entitled to any relief.

91. Mr. Nicoletti worked for JLL, and JLL agreed to pay Mr. Nicoletti for his services.

**ANSWER:** JLL admits the allegations in Paragraph 91 of the FAC.

92. JLL has willfully failed and refused to pay Mr. Nicoletti for all wages it owes him.

**ANSWER:** JLL denies the allegations in Paragraph 92 of the FAC.

93. As a result of JLL's failure and refusal to pay Mr. Nicoletti, he has suffered damages.

**ANSWER:** JLL denies the allegations in Paragraph 93 of the FAC.

## Count Five
## ADA Discrimination

94. Mr. Nicoletti alleges and incorporates by reference the allegations in paragraphs 1 through 53.

**ANSWER:** JLL incorporates by reference its answers to Paragraphs 1 through 53 of the FAC.

95. Mr. Nicoletti is a member of a protected class under the ADA, as he suffered from a disability at all relevant times aforementioned.

**ANSWER:** Paragraph 95 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL admits on information and belief

14

that Plaintiff suffered from a disability. JLL denies the remaining allegations in Paragraph 95 of the FAC.

96. At all relevant times aforementioned, Mr. Nicoletti was a qualified individual with a disability within the meaning of the ADA as he was able to perform the essential functions of his job for JLL with or without reasonable accommodation.

**ANSWER:** Paragraph 96 of the FAC requires a legal conclusion and therefore no response is required. To the extent a response is required, JLL denies the allegations in Paragraph 96 of the FAC.

97. By the conduct described above, JLL discriminated against Mr. Nicoletti because of his disability.

**ANSWER:** JLL denies the allegations in Paragraph 97 of the FAC.

98. At all relevant times aforementioned, JLL was aware of Mr. Nicoletti's disability.

**ANSWER:** JLL denies the allegations in Paragraph 98 of the FAC.

99. As a result of JLL's unlawful conduct, Mr. Nicoletti has suffered damages.

**ANSWER:** JLL denies the allegations in Paragraph 99 of the FAC.

WHEREFORE, Mr. Nicoletti demands the Court to:

A. Enter judgment in his favor;

B. Award Mr. Nicoletti damages in an amount to be determined at trial that exceeds $75,000.00, which includes:

    i. actual damages;

    ii. compensatory damages; and

    iii. consequential damages;

C. Award Mr. Nicoletti back pay and benefits;

D. Award Mr. Nicoletti interest on his back pay and benefits;

E. Award Mr. Nicoletti front pay and benefits;

  F. Award Mr. Nicoletti his attorneys' fees and costs;

  G. Award Mr. Nicoletti pre- and post-judgment interest; and

  H. Award Mr. Nicoletti all further relief the Court finds just and proper.

**ANSWER:** JLL admits that Plaintiff seeks the relief in the unnumbered "WHEREFORE" clause inclusive of subparts A-H, but denies that Plaintiff is entitled to any relief.

AFFIRMATIVE DEFENSES

Defendant Jones Lang Lasalle Americas, Inc., ("JLL" or "Defendant"), for its Affirmative Defenses states:

FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, because Plaintiff failed to mitigate Plaintiff's alleged damages.

SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, to the extent damages for multiple claims are duplicative.

WHEREFORE, JLL denies all liability and denies Plaintiff has sustained any damages as a result of JLL's alleged acts or omissions, and requests that this Court enter judgment in its favor and against Plaintiff, including awarding JLL its costs.

Dated: August 5, 2021      Respectfully submitted,

               /s/ *Lindsey M. Hogan*
               Lindsey M. Hogan
               Taylor L. Haran
               lindsey.hogan@faegredrinker.com
               taylor.haran@faegredrinker.com
               311 S. Wacker Drive, Suite 4300
               Chicago, Illinois 60606
               Telephone: (312) 212-6500
               Facsimile: (312) 212-6501

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 5, 2021, I electronically filed the foregoing **ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT** herein with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division, using the CM/ECF system, which sent notification of such filing to the registered CM/ECF participants.


              /s/ _Taylor L. Haran_