IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| Peter Nicoletti | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 1454 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Jones Lang LaSalle Americas, Inc. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

With discovery set to close on August 30, 2023, on August 16th, the plaintiff filed a motion to compel production of documents he claims are "material to core issues for [his] claims: (1) [defendant's] improper deductions and handling of "holdback" amounts that [defendant] subtracted from commissions owed to [him]; and (2) [defendant's] failure to pay [him] trailing commissions that he is owed." [Dkt. #71, at 1].

The plaintiff – who was terminated by his employer – the defendant – on May 8, 2020 [Dkt. #23, Pars. 55, 56]. The plaintiff, who was diagnosed with acute myeloid leukemia in late 2017, says that in doing so, because he has the defendant discriminated against him due to a disability in violation of the Americans with Disabilities Act [Dkt. #23, Pars. 95-98], and retaliated against him for his exercise of his rights under FMLA [Dkt. #23, Pars. 74, 75]. The plaintiff adds a claim for breach of contract, alleging that the defendant breached the contract it had with plaintiff when it discriminated against him, when it refused to pay him commission payments it owed him under the employment agreement, and when it refused to pay him the commission payments it owed him pursuant to U.S. Capital Markets Producer Compensation

Plan. [Dkt. #23, Pars. 81, 82]. There are also claims for unjust enrichment and unpaid wages. [Dkt. #23, Pars. 92, 97].

I.

Based on the plaintiff's allegations the pertinent period here runs from his diagnosis in November 2017 to his termination in May 2020. [Dkt. #23, Pars. 21, 56]. That's only two and a half years to cover in discovery but this *case* is already two and a half years old, and discovery began two years ago. [Dkt. #29]. To say the parties have moved at a leisurely pace is putting it mildly According to the plaintiff, the documents he is only now getting around to complaining about not receiving were requested a year and nine months ago and eight months ago. [Dkt. #71, at 2-4]. If they were so "material" to "core issues" of his claims, one must wonder why the plaintiff waited until two weeks before the close of discovery to bring his motion.

Perhaps because the plaintiff assumed discovery wasn't closing, ever. Discovery began way back in September of 2021. [Dkt. #29]. Along the way, the parties missed no fewer than seven fact discovery deadlines: April 1, 2022 [Dkt. # 29]; May 1, 2022 [Dkt. #33]; June 30, 2022 [Dkt. #43]; March 31, 2023 [Dkt. #56]; May 31, 2023 [Dkt. #63]; July 31, 2023 [Dkt. #67]; August 30, 2023 [Dkt. ##70, 76]. Two of those deadlines were the proverbial "final extensions." [Dkt. ##66, 70]. Generally, it has been unclear what the parties have been doing with all that extra time or why they needed it in the first place. That's because, generally, the parties have ignored the Federal Rules of Civil Procedure and Seventh Circuit precedent in asking for their extensions. Under Fed.R.Civ.P. 6(b)(1), a party must show "good cause" in order to obtain an extension. Under Fed.R.Civ.P 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." "Good cause" implies justification rather than excuse. *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020). Under Rule 16(b)(4), at least, a

showing of good cause must include a showing that the party or parties have been diligent. *Cage v. Harper*, 42 F.4th 734, 743 (7th Cir. 2022); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 878 (7th Cir. 2021)("Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment.").

But, the parties have asked for and received their multiple extensions without any such showings. For example, on February 24, 2023, the parties ask to extend the then-March 31, 2023, deadline by 60 days to May 31, 2023. They provided the court with no reason other than saying that "the Parties need additional time to schedule and complete discovery." [Dkt. #61]. That additional time was once again insufficient and, on the eve of that May 31st deadline, the parties were back yet again, asking for another 60 days.[1] Once again, all they told the court was that they "need additional time to complete discovery and depositions." [Dkt. #65]. Perhaps there's an argument that "we haven't finished, again" qualifies as an excuse but there is no argument that it qualifies as justification or diligence. Nevertheless, throughout this case, the parties were generously accommodated and their motion was granted as were the several before. It was, however, pointed out to the parties that there would be no further extensions. And, yes, the court realizes how silly that sounds now.

---

[1] Incidentally, asking for a 60-day extension after having already missed numerous deadlines and doing so on the day before fact discovery was to close evinces a sense of entitlement. It's difficult to see it as anything other than a cynical attempt to obtain an extension by default because, surely, out of six lawyers from three law firms, one of them must have known at least a week or two in advance they were, once again, not going to meet a deadline. *See, e.g., Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 947 (7th Cir. 2020)(decrying last-minute requests for extensions); *Berkeley\*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2023 WL 2390518, at \*4 (N.D. Ill. Mar. 7, 2023)("The only way to perceive what [plaintiff] has done is that it was an attempt to paint [the Judge] – or me – into a corner in the hopes of forcing one of us to do Berkeley's bidding by default."); *Monco v. Zoltek Corp.*, 2019 WL 4686547, at \*2, 332 F.R.D. 581 (N.D. Ill. Sept. 26, 2019)("Extensions by default, ... and that is in reality what is sought by the defendants – ought not be allowed."); *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at \*4 (N.D. Ill. 2016)("The 11th-hour tactics employed ... presuppose that a Judge will simply do whatever the parties wish."); *compare Allen v. Brown Advisory*, LLC, 41 F.4th 843, 853 (7th Cir. 2022)("Generally speaking, it is reasonable to conclude that a [party] is not diligent when [they] in silence watch[] a deadline pass even though he has good reason to act or seek an extension of the deadline.").

One wonders how many times a district court judge or a magistrate judge in this courthouse says something like "there will be no further extensions" or "this is the final extension." It has to be a lot. And, to be frank, it must very often be said with a wink and a nudge – or, perhaps a more contemporary "jk" – because, seemingly more often than not, it won't be the final extension. Sure enough, the parties – actually just the plaintiff, but he was unopposed by the defendant – were back on July 24, 2023, saying that, once again, they just couldn't get their jobs done in the time they had asked for. [Dkt. #69]. The parties did have an explanation this time: essentially, although the plaintiff had scheduled all his depositions before the July 31st deadline, the defendant produced some documents on July 20th and the plaintiff wanted to reschedule depositions so he could review those documents beforehand. [Dkt. #69, Pars. 5-12]. Plaintiff assured the court that the additional time was for review of this July 20th production and he was "not requesting an extension of any other discovery deadlines." The court granted another "final" extension until August 30th. [Dkt. #70].[2]

Plaintiff filed his motion to compel a couple of weeks later. The motion has nothing to do with any recent developments. Instead, as already noted, it concerns requests for production the plaintiff served and defendant responded to way back on December 23, 2021 (First RFP, Nos. 61, 66); requests for production and interrogatories the plaintiff served on December 22, 2022, and defendant responded to back on January 20, 2023 (Second RFP Nos. 1-4, 7-12;

---

[2] You can't make this stuff up but, that wasn't the final extension either. At 2 p.m. on August 28th, the plaintiff asked for an extension of the brand-new August 31st deadline because there was one more deposition scheduled for August 29th, but there was a hurricane evacuation order for Tampa where plaintiff's counsel were. The plaintiff – unopposed by the defendant – wanted a week's extension to reschedule that final deposition. [Dkt. #74, Par. 9]. According to the plaintiff, he was not requesting an extension of any other discovery deadlines. [Dkt. #74, Par. 11]. Of course, this additional extensions was granted as well. [Dkt. #76]. One might dare say it was the only extension of the many in this case that was granted for good cause. It could serve as a cautionary tale for attorneys who are cavalier about deadlines and extensions. If you keep going to the well when you're a little thirsty, you might find it empty when you are truly dehydrated.

Second Interrogs. Nos. 1, 2, 3, 5). And, just to keep things consistent with the way discovery has gone so far, the plaintiff asks not only for an order requiring the defendant to produce the document but also an order reopening discovery – after *seven* extensions – for an indefinite period to allow the plaintiff to review the documents and then depose an unspecified number of witnesses regarding the documents. [Dkt. # #78, at 4].

## II.

Obviously, given all of the parties' preceding delays, all this is a big ask. The discovery requests the plaintiff is complaining about are very stale. The plaintiff has known the defendant's objections and had the defendant's responses to those requests since February 2023. But, the plaintiff's motion regarding them is not only rather late, it comes from out of nowhere. There was no mention of any of this in the last few requests for extensions of the discovery deadline: July 24, 2023 [Dkt. #69 (extension to review documents before depositions)]; May 30, 2023 [Dkt. #65(extension for "additional time to complete discovery and depositions.")]; February 24, 2023 [Dkt. #61(extension for "additional time to schedule and complete discovery.")]. As of July 24th, discovery was over aside from a handful of depositions. The plaintiff didn't say anything about still waiting for production of discovery requests dating back to late 2021 and late 2022. And the plaintiff assured the court that his request for an extension was confined to that discrete request and he was "not requesting an extension of any other discovery deadlines." But now, in the motion to compel he filed at the end of discovery, he certainly is.

So, to be fair and having taken the plaintiff at his word, his motion to compel might be denied as just too late. Technically, the part of discovery that plaintiff is complaining about closed back on July 31st. The extension of that date, as the plaintiff promised, was only for

reviewing documents pertaining to a few depositions that would be rescheduled and completed before August 31st. That has nothing to do with the old discovery requests – some dating back to late 2021 – the plaintiff is complaining about now. And, surely, the plaintiff can see it is audacious to ask for discovery to be reopened to redo the very depositions that formed the basis of the last request for an extension of the discovery deadline.[3] But, addressing the plaintiff's concerns will serve the purpose of finalizing fact discovery and moving this case ahead to its next phase.

### III.

It's difficult to discern what the plaintiff now thinks was missing from the defendant's production which, in the main, seems to have been made many months ago. Plaintiff categorizes the purportedly missing documents as relating to "holdbacks" and "trailing commissions." In terms of "trailing commissions," the plaintiff explains that he is owed commissions – or, at least, a share of commissions – "for deals that he worked on and procured during his employment at [defendant], but which closed following his wrongful termination." That makes sense. If the plaintiff worked on deals that closed after he was terminated, it would

---

[3] To be fair, the defendant has not covered itself in glory either. After all, it was a party to every one of the missed deadlines. Yet, when it filed its response to the plaintiff's motion to compel, it referenced documents that it didn't bother to attach to its memorandum. In a footnote, six pages into its arguments, it says in a footnote that it realizes it didn't attach any documents mentioned in its brief. The defendant also says it would be happy to provide them if the court wanted to see them. [Dkt. #73, at 6 n.6]. It's hard to say why a party would refer the court to documents and not include those documents in its submission. But, from a practical standpoint, what the defendant suggests the procedure ought to be requires unnecessary steps. Once the court reviews the parties' submissions at the close of briefing and realizes one side's defendant's submission is incomplete, the court would have to issue an order for the withheld exhibits and then allow the plaintiff a chance to address the tardily provided documents in another reply brief. In this case, that just drags things out in a case that has already been dragged out enough. The defendant seems to suggest it couldn't include the documents because they were marked confidential, but so what? The parties have a confidentiality order covering that [Dkt. #40, Pars. 5(b)(3); 7], and the local rules provide the applicable procedure. N.D.Ill.L.R. 26.2. A good tip for future reference is to remember, as the Seventh Ciruit has said, that "[a]n advocate's job is to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). If a document is important to your point, simply attach it in the first place.

seem he'd be entitled to a share of the resulting commission commensurate with his work. According to the plaintiff, while the defendant produced documents, they fail to indicate whether the deals closed; (2) the reasons the deals did or did not close; and (3) whether [plaintiff] is entitled to additional commissions and, if so, the amount. [Dkt. #71, Par. 4].

The defendant says it has produced all relevant documents regarding trailing commissions plaintiff has earned. But, given the defendant's presentation in its response brief, explaining that plaintiff is only entitled to trailing commissions for deals that meet certain requirements under the U.S. Capital Markets Producer Compensation Plan, it would seem the defendant has only produced documentation for the deals that it thinks meet those requirements. But, this is discovery, not an answer to a complaint. The defendant can't just say "there's nothing to see here" and leave it at that. Indeed, the plaintiff tells the court that discovery produced so far undermines defendant's position as to two of the deals that were in progress when he was terminated. It will be for the fact-finder, judge or jury and not the defendant, to look at the deals and the whatever technicalities of the so-called U.S. Capital Markets Producer Compensation Plan may or may not apply and decide which deals merit trailing commissions and which don't. So, the defendant must produce documentation for the three deals plaintiff adverts to: Gramercy Fund 3 deal; the WAFRA East Coast Collection deal; and the DHL Livraga deal. [Dkt. #78, at 3-4].

The other part of the plaintiff's motion – the "holdback" part – isn't so clear. It seems that these "holdback" accounts are pooled accounts drawn returns on deal that are then used to pay bonuses for certain non-commissioned deal team members. [Dkt. #73, at 9]. But, there's no mention of "holdbacks" anywhere in plaintiff's amended complaint. There are no mentions of "holdbacks" in the document requests from November 2020. The first mention of any

"holdbacks", according to plaintiff's own motion, was at the tale end of plaintiff's Second Requests for Production which he served back in December 2022, over a year into discovery. [Dkt. #71, Par. 10]. There, the plaintiff asked for:

> 18. All documents evidencing that [plaintiff] consented to having [defendant] take holdbacks from completed deals, including the deals referenced in these Requests.
>
> 19. Documents evidencing where the funds from the holdbacks for [plaintiff's] deals were ultimately applied or allocated to.

[Dkt. #71-2, at 10-11]. Plaintiff explains that these "holdbacks" resulted in him being underpaid because:

> whenever [he] was involved in a deal, [defendant] deducted a portion of his due compensation in what is referred to as a "holdback account." [Defendant] purportedly and unilaterally made the holdback deductions to reimburse attributable expenses—even though [plaintiff] had no obligation, contractual or otherwise, to reimburse those expenses. Consequently, [plaintiff] received significantly lower compensation than was owed to him.

[Dkt. #71, Par. 2]. Defendant responded and objected back on February 15, 2023, arguing that the "holdbacks" weren't relevant to his complaint. The plaintiff didn't challenge the defendant's position until months later on May 31, 2023. [Dkt. #73, at 5]. Again, that doesn't make it seem like this discovery was, as the plaintiff claims, very "material" to his complaint.

Here, the court has to side with the defendant. The plaintiff's complaint, as already summarized, is about discrimination by being terminated. His breach of contract count says:

> 80. [Defendant] materially breached the contract when it discriminated against [plaintiff] and terminated him on the basis of his disability.
>
> 81. [Defendant] has also materially breached the contract by refusing to pay [plaintiff] the commission payments it owes him under the employment agreement.
>
> 82. [Defendant] has also materially breached the Plan by refusing to pay [plaintiff] the commission payments it owes him pursuant to it.

[Dkt. #23]. It is the plaintiff's burden to show that the discovery he's seeking in his motion to compel is relevant. *Santiago v. City of Chicago*, No. 1:19-CV-04652, 2023 WL 5096288, at *2 (N.D. Ill. Aug. 9, 2023); *Sterling Design & Constr., LLC v. Sage Design & Constr., LLC,* No. 20-CV-05549, 2022 WL 797050, at *9 (N.D. Ill. Mar. 16, 2022); *Kinon Surface Design v. Hyatt International Corp.*, No. 19 C 7736, 2022 WL 787956, at *2 (N.D. Ill. Mar. 15, 2022); *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 WL 4459527, at *1 (N.D. Ill. Sept. 29, 2021) But, there's no mention of a breach of the contract by way of improper holdbacks. There's nothing about being underpaid all along – for years – as a result of holdbacks. The complaint is about refusing to pay plaintiff at all for deals he was working on when he was terminated, purportedly due to his disability.

Unlike the plaintiff's complaint, the plaintiff's motion to compel seems to be challenging the commission distribution system that applied to brokers throughout his employment. [Dkt. #71, at 2, 5-6]. But, again, nowhere in his complaint does he say he was underpaid throughout his tenure. And, it is telling that not once in his motion to compel or his reply brief does the plaintiff cite to any allegation in his complaint to demonstrate the relevance of his holdback document requests.[4]

Plaintiff filed his amended complaint on July 22, 2021. [Dkt. #23]. The deadline for any further amendment of the pleadings was January 1, 2022. [Dkt. #29]. And, again, the plaintiff

---

[4] It might be worth pointing out that the two requests for holdback documentation the plaintiff served back in December 2022 are not limited in any way by time. Plaintiff began working for the defendant in January 2008. [Dkt. #23, Par. 10]. Even if the plaintiff's complaint mentioned or alluded to defendant improperly holding back funds from deals, a request for over 12 years of documents – January 2008 through May 2020 [Dkt. #23, Pars. 55, 56] – wouldn't fly; certainly not based on the plaintiff's motion. There would be statute of limitations problems with that and the plaintiff doesn't direct the court to any terms of his employment agreement covering commission computations [Dkt. #71, at 1-2], or any anything regarding the formation of his employment agreement that would dictate which state's statute of limitations might apply. So even if plaintiff could connect the dots from his allegations to his request for "holdback" documents, he would have had to do much more in his motion to compel than he has.

made no requests for any "holdback" documents until December 2022. So, given that timeline, and the multiple extensions of discovery, it appears that the plaintiff's "holdback theory' was an afterthought. But, that afterthought has come far too late.

## CONCLUSION

Accordingly, for the foregoing reasons, the plaintiff's motion to compel [Dkt. #71] is granted in part and denied in part. The defendant shall produce the documents pertaining to the Gramercy Fund 3 deal, the WAFRA East Coast Collection, and the DHL Livraga showing assets that were sold as a result of those transactions, when the sales occurred, and the amount of any commissions realized by the defendant. Obviously, given the many extensions of fact discovery in this case, discovery will not be reopened for the plaintiff to take additional fact discovery depositions. The parties are reminded that the deadline for completing expert discovery is December 20, 2023. [Dkt. #70]. In case either party might still take this kind of thing seriously, the parties are also reminded that the December 20th deadline was the result of the second "final" extension. [Dkt. #66, 70].

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 9/12/23